**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **LOURDES HYDE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-828C** |
| | ) | **(Judge Firestone)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE AND WRITTEN OBJECTION TO DEFENDANT'S MOTION FOR REMAND**

The Plaintiff, Lourdes Hyde, by and through undersigned counsel, hereby responds and objects to Defendant's Motion to Remand filed on February 11, 2008. The Remand requested by Defendant is premature at best, and an inappropriate attempt to bypass proper judicial review of the Department of Navy ("Navy") Board of Correction of Naval Records' ("BCNR" or "Board") decision, at worst. The Defendant asks for a remand so that the BCNR can consider "new" evidence that will be created by the Navy (a second handwriting analysis to be conducted by the United States Army Criminal Investigative Laboratory ("USACIL")), and submitted to the Board for consideration, resulting in a new decision by the Board, creating a new administrative record to be submitted to the Judge in this case. Defendant has cited no facts or case law that would allow such new evidence to be created by the Navy, nor considered by the Board, and also offers no facts or case law that would make remand proper at this time. Accordingly, for all the reasons discussed herein, and the oral arguments made at the status conference in this case, Plaintiff respectfully submits that Defendant's Motion to Remand should be denied.[1]

---

1 Given the limited facts and argument contained in Defendant's Motion to support it's request for Remand, Plaintiff is significantly hampered in her crafting of a response. Accordingly, if the Defendant files a reply to this response, Plaintiff requests permission to file a sur-reply.

In addition, at this time, the entire Administrative Record has not been submitted to the Judge, nor Plaintiff. Plaintiff submits that the Court cannot make a decision on this Motion, without at a minimum, having the complete Record before it.

**STATEMENT OF RELEVANT FACTS**

1. The Plaintiff, Lourdes Hyde, is the widow of Reginald P. Hyde, a Retired Petty Officer of United States Navy. Comp. ¶3.

2. The Defendant, the United States of America, is responsible for the payment of the benefits owed to the Plaintiff under the Survivor Benefits Plan ("SBP"), 10 U.S.C. § 1448(a)(3)(A), a statute which creates a substantive right enforceable against the United States of America for money damages. Comp. ¶4. At the status conference in this case, the Defendant stated that it does not challenge the Court's jurisdiction in this case.

3. On May 12, 1996, Reginald Hyde apparently executed DD Form 2656 ("Form 2656") and elected not to participate in the SBP. Compl. ¶¶ 5-6; Exhibit 1.

4. Section VII of DD Form 2656 is entitled "Survivor Benefit Plan Election." Mr. Hyde checked box "g" and apparently signed the form in Section IX. Compl. ¶6; Exh. 1.

5. Although service members may elect not to participate in the SBP, pursuant to 10 U.S.C. § 1448(a)(3)(A), "[a] married person who is eligible to provide a standard annuity may not without the concurrence of the person's spouse elect [] not to participate in the Plan."

6. Section VIII of Form 2656 is entitled "Survivor Benefit Spousal Concurrence." This section is completed by a service member's spouse if full coverage is not elected. Compl. ¶7; Exh. 1.

7. Prior to the Plaintiff's husband's death, Plaintiff never observed or reviewed the contents of the DD Form 2656, nor did she have any knowledge of Mr. Hyde's decision not to participate in the Plan. Compl. ¶¶ 9-10; *see* Exh. 1.

8. The writing of the Plaintiff's name, "Lourdes A. Hyde," as contained in box 35 of Section VIII on the copy of DD Form 2656, is not the signature of the Plaintiff, as the Plaintiff never signed the copy of DD Form 2656. Compl. ¶10.

9. The Plaintiff does not know, personally or professionally, the witness, "Ernest R. Walker," listed in box 37 and box 43 of Section VIII on the copy of DD Form 2656. Compl. ¶11.

10. The Plaintiff never received counseling from the United States Navy or any other military office concerning the effects of her husband's decision not to participate in the Plan. Compl. ¶12.

11. At no time did the Plaintiff concur or consent with Mr. Hyde's apparent election regarding the Plan. Compl. ¶13.

12. On June 1, 1996, Mr. Hyde retired from the United States Navy. Compl. ¶14.

13. On February 12, 2005, Reginald Hyde died. Compl. ¶ 15.

14. Plaintiff was married to Mr. Hyde at the time of his death on February 12, 2005. Compl. ¶3.

15. On February 14, 2005, the Plaintiff was informed of her late husband's election to not participate in the Plan. Compl. ¶16.

16. On May 20, 2005, the Plaintiff timely petitioned the Department of the Navy, Board for Correction of Naval Records to amend her husband's records to show that he elected to participate in the Plan retroactively back to May 1994. In her petition, the Plaintiff stated the writing of her name contained in box 35 on the copy of DD Form 2656 apparently signed by Mr. Hyde was not in fact her signature. Compl. ¶ 17.

17. On September 7, 2005, the BCNR denied the Plaintiff's petition. Exhibit 2.

18. In November 2005, the Plaintiff petitioned the BCNR with supplemental evidence: an opinion of Board Certified Document Examiner, Cina L. Wong. Ms. Wong's Curriculum Vitae and General Resume was also submitted to the Board. Exhibit 3.

19. Ms. Wong compared the DD Form 2656, with 15 examples of Mr. Hyde's signature, and 15 examples of Mrs. Hyde's signature and concluded that:

> Based upon thorough analysis of these items, and from an application of forensic document examination principles and techniques, it is my professional opinion, that the hand that authored the [15 examples of Mrs. Hyde's handwriting] was NOT the same hand that signed the signature "Lourdes A. Hyde" in the [DD form 2565].

Exh. 3, pg. 2 (emphasis in original). Accordingly, Ms. Wong affirmed that the writing of Plaintiff's name contained in box 35 on the copy of DD Form 2656 was in fact not the signature of the Plaintiff. Compl. ¶18; Exhibit 3.

20. On February 15, 2006, the BCNR again denied the Plaintiff's petition. Exhibit 4. The BCNR found, despite the opinion of Ms. Wong, and the other evidence presented, that there was "insufficient [evidence] to establish the existence of probable material error or injustice." *Id.* pg. 2.

21. Attached to the Board's February denial was a Memorandum dated January 17, 2006 by the Department of Navy, Office of Legal Counsel. Exhibit 5. In the opinion, the Navy found that Plaintiffs' evidence, including the assertion that the signature was not hers, and Ms. Wong's opinion that the signature was not Plaintiff's, did not "meet, let alone pass the threshold of 'substantial evidence' to overcome the presumption" that officials properly discharged their duties. Exhibit 5.

22. The Legal Counsel opinion also references a Pers-62B advisory opinion dated May 18, 2005 discussing a case in which DFAS-CL obtained an affidavit from the spouse indicating that her signature was forged and a similar affidavit from the witness shown on the form. *Id.* In this case, as Plaintiff does not know the witness, she could not provide such a statement from him.

23. Neither the Navy nor the BCNR alleged in its documents that Mr. Walker was an employee of the Navy or otherwise known to the Defendant. *See* Exhs. 2, 4 and 5.

24. In response to the Denial by the Board, the Plaintiff filed the instant complaint.

25. Defendant now asks this Court to remand this case to the Navy for three purposes: 1) to obtain the results of a handwriting analysis to be conducted by the USACIL; 2) for the BCNR to reconsider its denial of Mrs. Hyde's claim, in light of the results of the handwriting analysis to be conducted by the USACIL; and 3) for the BCNR to explain in detail the rationale supporting its final decision upon remand of Mrs. Hyde's claim. Defendant's Motion.

26. Defendant submits that "when the BCNR examined Mrs. Hyde's petition for amendment of her husband's records, it did not have the benefit of a USACIL handwriting analysis." However, it did have the handwriting analysis of Ms. Wong.

27. At the time of its original consideration, neither the BCNR nor the Navy, requested USACIL to provide a handwriting analysis, or ask the Plaintiff to provide more then one opinion.

28. Defendant's counsel represented at the status conference that the BCNR did not have authority to seek a handwriting analysis from USACIL during its consideration of this matter.

29. The BCNR is "not an investigative body." Department of the Navy, Procedures of the Board for Correction of Naval Records, SECNAVINST 5420.193, Section 2b., Exhibit 6.

30. Defendant's counsel represented at the status conference that the Navy had the ability to seek a handwriting analysis from USACIL during its consideration of this matter, but offered no such specific authority for that ability.

31. The full and complete Administrative Record in this case has not been presented to the Court.

## Legal Analysis

### Legal Standards

This Court may review the action of the BCNR to determine whether the administrative body acted in a manner that was arbitrary, capricious, contrary to law, or unsupported by substantial

evidence. *See Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004); *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986); *Doyle v. United States*, 220 Ct. Cl. 285, 311 (1979); *Sanders v. United States*, 219 Ct. Cl. 285, 298-99 (1979). "A court may find a correction board's decision arbitrary and capricious if the board entirely fails to consider an important aspect of a problem, offers an explanation for its decision that runs counter to the evidence before the board, or is so implausible that it could not be ascribed to a difference in view or the product of board expertise." *Van Cleave v. United States*, 66 Fed.Cl. 133, 136 (2005) (citation omitted). This court does not simply "rubber stamp" the agency's decision however in mild-mannered deference. *Livenwood vs United States* 49 Fed.Cl. 413, 417 (2001), *citing Bureau of Alcohol, Tobacco & Firearms v.* FLRA, 464 US 89, 97 (1983). The standard in these cases is broadly referred to as the "substantial evidence" rule. *See Heisig vs. United* States, 719 F.2d 1153 (Fed.Cir. 1983).

The Tucker Act authorizes this court "to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2); see RCFC 52.2; *accord Harris v. United States*, 8 Cl. Ct. 299, 303 (1985). RCFC 52.2 describes the procedure according to which this court may execute its remand authority. "An order of remand shall (A) delineate the area of further consideration or action deemed warranted on the remand, (B) fix the duration of the remand period, not to exceed 6 months, and (C) specify the extent to which court proceedings shall be stayed during the remand period." RCFC 52.2(a)(2). This statutory authority gives the courts the flexibility to require exhaustion of correction board remedies in cases in which the benefits of exhaustion are applicable, but to proceed directly to adjudication if the court concludes that resort to the correction board would not serve a useful purpose.

In cases where the court concludes that remand to the Board would not serve a useful

purpose, the Tucker Act authorizes the court to issue orders directing correction of applicable records. *See* 28 U.S.C. § 1491(b). In other words, if this Court finds that the Board's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence, the Court may remand the case to the BCNR with an order to correct the disputed records and for the disputed funds to be paid to Plaintiff. *See e.g. Kelly vs. United States*, 10 Cl.Ct. 579 (1985) (Court ordered judgment in favor of plaintiff for the amount stipulated and directed the Secretary of the Air Force to change plaintiff's late husband's military records in a manner consistent with Opinion), *aff'd by* Kelly v. U.S., 826 F.2d 1049 (Fed.Cir. 1987); *Long v. United States*, 12 Cl. Ct. 174, 176, 177 (1987) (remand to Board for the Correction of Military records); *Harris v. United States*, 8 Cl. Ct. 299, 303 (1985) (same); *Evensen vs. United States,* 228 Ct.Cl. 207, 654 F.2d 68 (1981) (same).

**Legal Argument**

Defendant asks for a remand so that the BCNR can consider a second handwriting analysis to be conducted by the United States Army Criminal Investigative Laboratory (at the behest of the Navy), and issue a new decision based on that new evidence. Defendant has cited no facts or case law that would allow such new evidence to be created by the Navy, nor considered by the Board, and also offers no facts or case law that would make remand proper at this time. Plaintiff submits that this Motion should be denied because 1) no such authority has been offered; and 2) once the administrative record is before the Court, the Judge can determine that the BCNR's decision denying Plaintiff's request to correct the records was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. Also, if after full review of the administrative record, the Judge believes a remand is proper, the Judge may order such remand at that time. Now, it is premature.

The only legal authority cited by the Defendant in it's Motion for Remand is *King v. United*

*States*, 65 Fed. Cl. 385, 391 (Fed. Cl. 2005). Defendant cites *King* for the proposition that "this Court's "review of military benefits decisions involving Correction Boards typically are based on an administrative record consisting of the documents and evidence that were before the Correction Board, any transcripts of proceedings, and the documents memorializing the board's determinations." Motion at pg. 3.[2] Given this authority, the Court should review the existing administrative record to determine whether the BCNR's decision comports with the legal standard applicable to its decision. There is nothing in *King* that supports Defendant's Motion for a Remand.

However, without explaining the connection, Defendant cites *King,* and then takes a legal leap to the conclusion that a remand is "*necessary* to allow the BCNR to consider USACIL's opinion and create a record of its decision based upon new information that it will be placed before it." Defendant's Motion at pg 3 (emphasis added). Such a remand is not "necessary," but a thinly veiled attempt to create a different administrative record for the Court's review. A record that is presumably more favorable to the Defendant.

This Court has noted that it may remand matters back to Correction Boards for consideration after making a determination that the Board did not consider or address evidence before it that may have had the effect of changing the result. *See Six vs. United States,* 71 Ct.Cl. 671, 679-689 (2006); *Greene vs. United* States, 65 Fed.Cl. 375 (2005) (because the decision of the ABCMR provides no explanation as to why Mr. Greene's claim was denied, or even any indication that it was considered, the matter is remanded); *Lopez-Velazquez vs. United States,* 69 Fed.Cl. 64 (2005) (Although the

---

2 *See also, See Bishop v. United States*, 26 Cl. Ct. 281, 285 (1992)(Court review of military benefits decisions involving Correction Boards typically are based on an administrative record.) . There are cases which support that a plaintiff in military pay cases are entitled to supplement the administrative record with additional evidence, *see e.g. Heisig vs. United States,* 719 F2d. 1153, 1156 (Fed. Cir. 1983). If the Court finds that Plaintiff is allowed to supplement the instant record, then remand is most definitely premature.

AFBCMR may have failed to consider other pertinent evidence, it seems clear that it did not consider the Air Force records of its investigation; therefore, the court find remand appropriate); *Istivan vs. United States*, 231 Ct.Cl. 671, 689 F.2d 1034, 1038-9 (1982) (remanding military disability retirement claim where Board failed to provide explanation for its actions). In addition, the Supreme has identified certain circumstances under which remand is appropriate:

> If the record before the agency does not support the agency action [or] if the agency has not considered all relevant factors . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *Florida Power & Light Co. v. Lorion*, 470 U.S.729, 744 (1985); *see also Diversified Maint. Sys., Inc. v. United States,* 74 Fed. Cl. 122, 127 (2006) ("the views expressed in *Florida Power & Light* reflect long-standing administrative practice and precedents").

32. This case does not meet the standard for remand. The BCNR apparently did consider the evidence before it, but found it insufficient. Therefore, the matter is ripe for the Court to evaluate whether there is substantial evidence to support the BCNR's decision. In November 2005, the Plaintiff petitioned the BCNR with supplemental evidence: an opinion of Board Certified Document Examiner, Cina L. Wong. Ms. Wong compared the DD Form 2656, with 15 examples of Mr. Hyde's signature, and 15 examples of Mrs. Hyde's signature and concluded that:

> Based upon thorough analysis of these items, and from an application of forensic document examination principles and techniques, it is my professional opinion, that the hand that authored the [15 examples of Mrs. Hyde's handwriting] was NOT the same hand that signed the signature "Lourdes A. Hyde" in the [DD form 2565].

Exh. 3, pg. 2 (emphasis in original). Accordingly, Ms. Wong affirmed that the writing of Plaintiff's name contained in box 35 on the copy of DD Form 2656 was in fact not the signature of the

Plaintiff. Exhibit 3. The BNCR found that despite the opinion of Ms. Wong, and the other evidence before it, that there was "insufficient [evidence] to establish the existence of probable material error or injustice." *See* Exh. 4, pg. 2. The Navy's recommendation, on which the BCNR relied, found that Plaintiffs' evidence, including the assertion that the signature was not hers, and Ms. Wong's opinion that the signature was not Plaintiff's, did not "meet, let alone pass the threshold of 'substantial evidence' …. *See* Exh. 5, pg. 2. Plaintiff submits that the Board's conclusion is not supported by substantial evidence.

It is not enough for the [Defendant] to rely on the presumption of official procedural regularity when there is contrary credible evidence presented to overcome the presumption, as there was here. *See Kelly vs. United States* , 826 F.2d 1049, 1053 (1987). In this case, there was credible evidence that the signature on the Form 2656 was not Plaintiff's. Despite this, the Navy recommended, and the BCNR denied Plaintiff's request to correct records. Plaintiff believes this decision should be overturned by the Court.

Finally, Plaintiff submits, it is only after a full review of the record (not currently before the Judge) that a determination can be made if a remand is necessary and thus the Defendant's Motion should, at the very least, be denied as premature.

**CONCLUSION**

For all of the foregoing reasons, the Judge should deny Defendant's Motion for Remand.

March 10, 2008

Respectfully Submitted,

Sandra Mazliah

______________________________

Sandra Mazliah, Bar No. 44074
PASSMAN & KAPLAN, P.C.

1090 Vermont Ave., N.W., Suite 500
Washington, DC 20005
Tel: (202)789-0100
Fax: (202)789-0101

Attorney for Plaintiff

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **LOURDES HYDE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-828C** |
| | ) | **(Judge Firestone)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S INDEX TO EXHIBITS**

Exhibit 1: DD Form 2656 apparently executed on May 12, 1996 by Reginald Hyde

Exhibit 2: Denial of Request to Correct Records, dated September 7, 2005.

Exhibit 3: Opinion of Board Certified Document Examiner, Cina L. Wong, with Curriculum Vitae and General Resume.

Exhibit 4: Denial of Request to Correct Records, dated February 15, 2006.

Exhibit 5: Memorandum dated January 17, 2006 by the Department of Navy, Office of Legal Counsel.

Exhibit 6: Department of the Navy, Procedures of the Board for Correction of Naval Records, SECNAVINST 5420.193, Section 2b., Exhibit 6.

# Exhibit No. 1

**SECTION I - PAY IDENTIFICATION**

| 1. NAME (LAST, First, Middle Initial) | 2. SOCIAL SECURITY NUMBER | 3. RETIREMENT/TRANSFER DATE (Actual date pay will start) | 4. DATE OF BIRTH |
|---|---|---|---|
| Hyde, Reginald P | 357 18 5625 | 01 Jun 96 | 7/21/54 |

| 5. RANK/RATE/BRANCH OF SERVICE | 6. ROUTING NUMBER (See instructions) | 7. TYPE OF ACCOUNT (~~Savings~~ (S) or Checking (C)) | 8. ACCOUNT NUMBER (See instructions) |
|---|---|---|---|
| BT/E-5 USN | 256074974 | ~~Savings~~ | 0441378700 001 |

| 9. FINANCIAL INSTITUTION NAME AND ADDRESS (Street, City, State, and 9-digit ZIP Code) | 10. CORRESPONDENCE ADDRESS (Street, Apartment No., City, State, 9-digit ZIP Code and Telephone Number) |
|---|---|
| NAVY Federal Credit Union P.O. Box 3100 Merrifield, VA 22119-3100 | 13812 Chruchville Dr. Upper Marlboro MD. 20772 |

**SECTION II - FEDERAL EMPLOYMENT AGREEMENT** *(See Forms Completion Instructions)*

**11. CERTIFICATION/SIGNATURE OF EMPLOYEE**

My signature signifies that I agree to notify the respective DFAS Center when I become employed by a Federal Agency. I will provide the effective date of employment, name and address (including ZIP Code) of the employing agency, and the amount of my salary.

Reginald P. Hyde
SIGNATURE OF EMPLOYEE

**12. COMPLETE ONLY IF YOU ARE A MEMBER OR FORMER MEMBER OF THE RESERVE COMPONENTS NOT ON ACTIVE DUTY RETIRING AT AGE 60.**

a. Do you receive or were you receiving on the date of retirement any VA compensation or salary from another Federal agency? ☐ YES ☐ NO

b. Effective Date of Payment or Salary

c. NAME AND ADDRESS OF FEDERAL AGENCY *(Include 9-digit ZIP Code)*

d. TYPE OF PAYMENT

e. AMOUNT OF PAYMENT

**SECTION III - DESIGNATION OF BENEFICIARIES FOR UNPAID RETIRED PAY**

| 13. a. NAME (LAST, First, Middle Initial) | b. ADDRESS (Street, City, State and ZIP Code) | c. RELATIONSHIP | d. SHARE |
|---|---|---|---|
| Hyde, Reginald P. | 13812 Chruchville Dr. Upper Marlboro MD. 20772 | Spouse | 100 % |
| | | | % |
| | - | | % |
| | | | % |

**SECTION IV - FEDERAL INCOME TAX WITHHOLDING INFORMATION** *(Submit information in Items 14 - 17 in lieu of IRS Form W-4 for tax purposes.)*

| 14. MARITAL STATUS | 15. TOTAL NUMBER OF EXEMPTIONS CLAIMED | 16. ADDITIONAL WITHHOLDING (OPTIONAL) | 17. I CLAIM EXEMPTION FROM WITHHOLDING; ENTER "EXEMPT" |
|---|---|---|---|
| ☐ Single ☒ Married ☐ Married but withhold at higher single rate | 3 | | |

18. ARE YOU A UNITED STATES CITIZEN? ☒ YES ☐ NO *(If "no," see Section IV instructions).*

**SECTION V - VOLUNTARY STATE TAX WITHHOLDING**

| 19. STATE DESIGNATED TO RECEIVE TAX | 20. REQUESTED MONTHLY AMOUNT (Not less than $10.00) | 21. RESIDENCE ADDRESS (If different than address listed in Item 10, enter Street, Apartment No., City, State and 9-digit ZIP Code) |
|---|---|---|
| Maryland | $10.00 | |

**SECTION VI - DEPENDENCY INFORMATION**

| 22. SPOUSE NAME (LAST, First, Middle Initial) | 23. SPOUSE SOCIAL SECURITY NUMBER | 24. SPOUSE DATE OF BIRTH |
|---|---|---|
| ~~Hyde, Reginald~~ RAH Hyde, Lourdes A | 335 48 5960 | 7/27/54 |

| 25. DATE OF MARRIAGE | 26. PLACE OF MARRIAGE (City and State) |
|---|---|
| APR 21, 1976 | Chicago, ILL |

27. LIST YOUR DEPENDENT CHILD(REN) *(Designate which child(ren) resulted from marriage to former spouse, if any. Indicate (FS) after the relationship on "RELATIONSHIP" item. Use separate sheet of paper to list additional children.)*

| NAME a. | DATE OF BIRTH b. | SOCIAL SECURITY NUMBER c. | RELATIONSHIP (son, daughter, stepson, etc.) d. | DISABLED (Yes or No) e. |
|---|---|---|---|---|
| Lauren Roxann Hyde | May 31, 1982 | 579250961 | daughter | No |
| | | | | |
| | | | | |



REPRODUCED AT GOVERNMENT EXPENSE

**SECTION VII - SURVIVOR BENEFIT PLAN (SBP) ELECTION** *(See your Survivor Benefit Plan counselor before making an election.)*

**28. BENEFICIARY CATEGORY (IES)** *(Check only one item AND circle applicable word)*

| | |
|---|---|
| | a. I elect coverage for spouse only. (I do/do not have dependent children.) |
| | b. I elect coverage for spouse and child(ren). |
| | c. I elect coverage for children only. (I do/do not have a spouse.) |
| | d. I elect coverage for the person named in Item 30 who has an insurable interest in me *(See Forms Completion Instructions).* |
| | e. I elect coverage for the person named in Item 30 who is my former spouse *(See Forms Completion Instructions and complete Former Spouse Election Statement).* |
| | f. I elect coverage for the person named in Item 30 who is my former spouse and dependent child(ren) of that marriage *(See Forms Completion Instructions and complete Former Spouse Election Statement).* |
| ✓ | g. I elect not to participate in SBP (I do/do not have eligible dependents under the plan.) |

**29. LEVEL OF COVERAGE:** *(Complete unless 28d or 28g was selected above. See Forms Completion Instructions)*

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | a. I elect coverage to be based on full gross retired pay. | | | | | | | | | |
| | b. I elect coverage with a reduced base amount of $ ________ *(See Forms Completion Instructions).* | | | | | | | | | |
| | c. I elect basic coverage based on full gross pay plus supplemental coverage of *(Check one)* | | NONE | | 5% | | 10% | | 15% | | 20% |

By electing supplemental coverage, I understand that I waive my right to use the social security offset method of computing the Survivor Benefit at age 62 and older *(See Forms Completion Instructions).*

| 30. NAME OF INSURABLE INTEREST OR FORMER SPOUSE BENEFICIARY *(LAST, First, Middle Initial)* | 31. SOCIAL SECURITY NUMBER | 32. RELATIONSHIP | 33. DATE OF BIRTH |
|---|---|---|---|
| | | | |

**34. ADDRESS** *(Street, City, State and ZIP Code)*

**SECTION VIII - SURVIVOR BENEFIT SPOUSAL CONCURRENCE** *(Required when member is married and does not elect full coverage.)*

I hereby concur with the Survivor Benefit Plan election made by my spouse. I have received information that explains the options available and the effects of those options. I have signed this statement of my own free will.

| 35. SIGNATURE OF SPOUSE | 36. DATE |
|---|---|
| Lourdes A. Hyde | 12 may 96 |

| 37. NAME OF WITNESS *(LAST, First, Middle Initial)* | 38. SIGNATURE OF WITNESS |
|---|---|
| Walker, Ernest R | Ernest Walker |

| 39. ADDRESS OF WITNESS *(Street, City, State and ZIP Code)* | 40. DATE |
|---|---|
| 1730 7th St N.W. #205 Wash D.C. 20001 | 12 may 96 |

**SECTION IX - CERTIFICATION**

Under penalties of perjury, I certify that the number of withholding exemptions claimed does not exceed the number to which I am entitled, and that all statements on this form are made with full knowledge of the penalties for making false statements *(18 U.S. Code 287 and 1001 provide for a penalty of not more than $10,000 fine, or 5 years in prison, or both).*

| 41. SIGNATURE OF MEMBER | 42. DATE |
|---|---|
| Raymond P. Hyde | 12 may 96 |

| 43. NAME OF WITNESS *(LAST, First, Middle Initial)* | 44. SIGNATURE OF WITNESS |
|---|---|
| Ernest R. Walker | Ernest Walker |

| 45. ADDRESS OF WITNESS *(Street, City, State and ZIP Code)* | 46. DATE |
|---|---|
| 1730 7th St N.W. #205 Wash D.C. 20001 | 12 may 96 |


REPRODUCED AT GOVERNMENT EXPENSE

# Exhibit No. 2

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

MEH
Docket No. 3470-05
7 September 2005

LOURDES HYDE
6020 CALIFORNIS CIRCLE #213
ROCKVILLE MD 20852

Dear MRS. HYDE,

This is in reference to your application for correction of your deceased spouse's naval record pursuant to the provisions of 10 USC 1552.

A three-member panel of the Board for Correction of Naval Records, sitting in executive session, considered your application on 7 September 2005. Your allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of this Board. Documentary material considered by the Board consisted of your application, together with all material submitted in support thereof, your spouse's naval record and applicable statutes, regulations and policies. In addition, the Board considered the advisory opinion furnished by NPC memorandum of 17 Aug 05, a copy of which is attached.

After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice. In this connection, the Board substantially concurred with the comments contained in the advisory opinion. Accordingly, your application has been denied. The names and votes of the members of the panel will be furnished upon request.

It is regretted that the circumstances of your case are such that favorable action cannot be taken. You are entitled to have the Board reconsider its decision upon submission of new and material evidence or other matter not previously considered by the Board. In this regard, it is important to keep in mind that a presumption of regularity attaches to all official records. Consequently, when applying for a correction of an official naval record, the burden is on the applicant to demonstrate the existence of probable material error or injustice.

Sincerely,

W. DEAN PFEIFFER
Executive Director

Enclosure

# Exhibit No. 3

**Cina L. Wong and Associates, Ltd.**

***Court Qualified/ Board Certified Document Examiner***

PO Box 1293 • Norfolk VA 23501 • USA • Ph: (757) 622-9606/Fax: 622-9585
E-mail: NOFORGERY@aol.com

Lourdes Hyde
6020 California Circle #213
Rockville MD 20852

October 14, 2005

Dear Mrs. Hyde:

Pursuant to your request, I have examined certain materials and documents consisting of the following:

**Questioned Document (copy):**

Q1: Survivor Benefit Plan, DD Form 2656, JUN 93. Page 3. Dated 12 May 96. Signature of Lourdes A. Hyde is in question.

**Standards Used for Comparison:** *(Allegedly signed by Reginald P. Hyde)*

S1: Survivor Benefit Plan, DD Form 2656, JUN 93. Page 3 and 4. Dated 12 May 96. Copy.
S2: Mazda American Credit. Lease Extension Agreement. Dated 05-01-1995. Copy.
S3: James Madison Mortgage Company. Acknowledgement of Property Seller/Owner. Dated 3/15/96. Copy.
S4: College Park Motor Cars. Lease title stock no. 566031. Dated Apr 29, 1995. Copy.
S5: United States Passport. Issue date, May 2, 1980. Original.
S6: Application for Uniformed Services Identification Card Deers Enrollment. Dated 1997 Jun 07. Original.
S7: Event: R25 Record of Emergency Data/Dependency Application. Dated 95 Feb 08. Copy.
S8: Application for Shipment and/or Storage of Personal Property. Dated 29 Sep 95. Copy.
S9: Maryland Temporary Registration Certificate. Dated 04/29/95. Copy.
S10: Release from Active Duty and Transfer to Inactive Duty… Dated 95 Sep 29. Copy.
S11: Direct Deposit Sign-Up Form. Dated 13 May 96. Copy.
S12: Prior Use Acknowledgement. Dated 04/29/95. Copy.
S13: James Madison Mortgage Company Name Affidavit. Dated 03/15/96. Copy.
S14: MARLO Sales Order, stapled to a yellow NCR copy. Dated 09/10/95. Original.
S15: Two paged Note regarding non-assumable loan. VMP Mortgage forms. No date by signature. Copy.

**Standards Used for Comparison:** *(Allegedly signed by Lourdes A. Hyde)*

S16: Survivor Benefit Plan, DD Form 2656, JUN 93. Page 3 and 4. Dated 12 May 96. Copy.
S17: Mazda American Credit. Lease Extension Agreement. Dated 05-01-1995. Copy.
S18: James Madison Mortgage Company. Acknowledgement of Property Seller/Owner. Dated 3/15/96. Copy.
S19: College Park Motor Cars. Lease title stock no. 566031. Dated Apr 29, 1995. Copy.
— S20: Enlisted Performance Evaluation Report. Date forwarded 85 Apr 17. Copy.
S21: Social Security Card. No date. Copy.
S22: Personal Health History. Signature dated 21 Jan 1986. Copy.
S23: James Madison Mortgage Company Name Affidavit. Dated 03/15/96. Copy.
S24: Finger print card. Dated 26 Jun 98. Copy.
S25: Maryland State Police- License and Permit Application. Dated 9/16/03. Copy
S26: DOT/USCG Periodic Drug Testing Form. Dated 16 June 2003. Copy.
S27: E-mail addressed to Honorable Chris Van Hollen. Dated 6/30/2005. Copy.
S28: Part III – Claim for Plat Cost Allowance. Dated 06 Mar 2005. Copy.
S29: Two paged Note regarding non-assumable loan. VMP Mortgage forms. No date by signature. Copy.
S30: United State Passport. Date of issue 07 Oct 2002. Copy.

Based upon thorough analysis of these items, and from an application of forensic document examination principles and techniques, it is my professional opinion, that the hand that authored the known Standards for Comparison S16-S30, is NOT the same hand that signed the signature "Lourdes A. Hyde" in the Questioned Document (Q1).

This opinion is based on copies alleged to be true representatives of the original document.

Sincerely,

Cina Wong

Cina L. Wong, BCDE
President

# Cina L. Wong and Associates, Ltd.

***Court Qualified / Board Certified Document Examiner***

1131 Granby St. • Norfolk VA 23510 • U.S.A. • Ph: (757) 622-9606 Fax: 622-9585
E-mail: NOFORGERY@aol.com


*Qualifying experience in scientific examination of: signatures, handwriting/handprinting, typewriting, page substitutions, watermarks, erased/obliterated/altered writing, numerical ID, ink types, rubber stamp signatures, fake notary stamps, sequential writing, photocopy fraud, faxed documents, indented writing, anonymous letters and disguised writing.*

*Educational training includes: College accredited course with Larry Zieglar, a former FBI Document Examiner and a specialized course with John W. Hargett, past Chief Document Examiner with the U.S. Secret Service.*

## Curriculum Vitae and General Resume

**EDUCATIONAL BACKGROUND:**

**San Jose State University San Jose, California**
Bachelor of Arts Degree.

**COURT EXPERIENCE:**

Court qualified as an Expert witness in State and Federal courts.

**PROFESSIONAL AFFILIATIONS:**

**National Association of Document Examiners (NADE) Delaware**
Offices held: Professionalism Chairman ('95-'97)
Membership Chairman ('97-'98) Vice President ('98-'00)

**Northwest Fraud Investigators Association (NWFIA) Tukwila, WA**
"An organization ... with a purpose to secure the cooperation of those interested in the location, apprehension, and conviction of persons defrauding the public."

**BOARD CERTIFICATION:**

As quoted in 1998 from **Court TV**: *"Cina Wong...the youngest Board Certified Handwriting Expert in the history of the National Association of Document Examiners (NADE)."* Certification obtained in 1995 through extensive written and oral testing.

**TRAINING:**

**Questioned Documents San Francisco, California**
Completion of course in Questioned Document Examination. Involved methods of forgery detection, case studies, hands on equipment operation/technique and court qualification procedures.

**Signature Identification San Francisco, California**
A study of: various techniques used to verify signatures, recognizing different forms of forged signatures, use of equipment to aid in handwriting I.D..

**Effects of Health on Handwriting**
**Sunnyvale, California**
Taught by Ms. Wellingham-Jones (an expert in researching identifying health related conditions and medications affecting handwriting).

**David Liebman, MA, BCDE (President of N.A.D.E.)**
Advanced training. Three year mentorship program offered by N.A.D.E. (National Association of Document Examiners). Study of new techniques and procedures in the document field, court appearances, preparation of court exhibits, use of forensic examination and magnification equipment, typewriter identification, sequential entries, inks, copy machine forgeries, forensic and document photography.

**COMPLETION OF COLLEGE LEVEL COURSE IN QUESTIONED DOCUMENTS:**

**Northern Virginia College**
**Annadale, Virginia** 1995
Instructed by Larry Ziegler, at the time, current Questioned Document Examiner for the FBI.

**CONTINUING EDUCATION:**

**Andrew Bradley's Forensic Document Examination Course**
A 20 lesson course which entail subjects, such as: The mechanics of Handwriting, Proper Procedures for Obtaining Exemplars, Identification of Handprinting, Disguised Writing, Forgeries, Photo Copy Examination, Typewriter Identification, Anonymous Letters, Document Photography, Examination of Ink and Paper, Writing Instruments, Erased and Obliterated Writing, Use of ESDA...

**SPECIALIZED COURSE:**

**Document Examination**
**Bend, Oregon** 1998
Handwriting analysis course instructed by John W. Hargett, the Chief Document Examiner for the U.S. Secret Service. He has been a Handwriting Expert with 31 years experience. Mr. Hargett has also headed the Secret Service International Forensic Training program and has lectured at the U.S. Secret Service Questioned Document Course since 1989.

**RESIDENT TRAINING SEMINARS ATTENDED:**

**NADE Conference 1991 Los Angeles, California**
Workshop participation in: Ink identification by well-known ink chemist Izzy Lieberman, Document photography, Guidelines for taking exemplars, Preparation of courtroom exhibits, Mock court, Forgeries.

**NADE Conference 1992 Atlanta, Georgia**
Workshop participation in: Typewriter identification, contracts, Paper/Watermark identification, Case studies, Document photography, Depositions and Court qualification, Photocopy identification, Computer generated documents and alterations, Forgery and Facsimile machines.

**NADE Conference 1994 Concord, Massachusetts**
Workshop participation in: Information on the current Federal Rules on expert testimony, Case studies, Introduction to new document examination equipment, Variations of courtroom exhibits, Forensic/Document photography with new advances, Counterfeit money, Handwriting of anonymous letters.

**NADE Conference 1995 San Antonio, Texas**
Workshop participation in: Cross examination, Personal check security, Disguised writing to defraud, Examination of writing under liquid paper correction fluid, Professionalism and research resources, Handling of valuable documents.

**NADE Conference 1996 Baltimore, Maryland**
Workshop participation in: New research and advanced techniques in Pattern Recognition, Exhibit Preparation, Unusual Variations misidentified as Significant Differences.

**NWFIA Conference 1998 Bend, Oregon**
Forensic Document Examination sessions with Chief Document Examiner of the U.S. Secret Service, John W. Hargett, Equifax Credit Information Service on how to detect fraud via credit reports with Bonnie Meeks, and Howard Pellett of the Internal Revenue Service on fraud concerning Trusts and Pure Trusts.

**NADE Conference 1999 Orlando, Florida**
Workshop participation in: New techniques and equipment used to identify Obliterated /Indented Writing, Case Studies, advances in Ink Chemistry, Notary Stamp Fraud, Rubber Stamped Signatures, Crossed Lines, Sequential Writing, History, Production and Conservation of Paper, Signature Identification and Exemplars.

**NADE Conference 2000 Albuquerque, New Mexico**
Advanced document examination research from La Trobe University, Australia, Rubber Stamp Forgeries, Identifying Children's Writing, Anonymous Documents, and Introduction of New Equipment for Document Examiners.

**AFDE Symposium 2002 Las Vegas, Nevada**
American Board of Forensic Document Examiners. Computer based study validating the individuality of handwriting, check washing, faxes, maximizing indented image using a calibrated ionizer and Adobe Photoshop, and FSAB and ATSM standards.

**LECTURES:**

**NADE Special Pre-Conference**
**Atlanta, Georgia**

**NADE Conferences**
**Texas and Florida**

**First Virginia Bank**
**Norfolk, Virginia**

**Certified Fraud Examiners**
**Williamsburg, Virginia**

**Old Dominion University**
**Norfolk, Virginia**

**VA State Criminal Justice Dept**
**Virginia Beach, VA**

**William & Mary College – Master's Program**
**Hampton, Virginia**

**IBM**
**Raleigh, North Carolina**

**PRINT MEDIA:**

Subject or mentioned in articles of: USA Today, Virginian- Pilot, Boulder Camera, Boulder Daily, The Progress Index, The New York Post…

**RADIO APPEARANCES:**

Peter Boyles in Boulder, CO; Victoria Jones in New York, NY; Lance Matthews at WROW in New York; Radio America, Nationwide.

**BROADCAST MEDIA:**

Featured on: WTKR's Morning Show, ABC, NBC and Fox Affiliate News, Geraldo, Court TV, Extra, Hard Copy, Fox Network News (Bill O'Reilly & On The Record with Greta Van Susetern), Good Morning America, CNN and a CBS exclusive for Dan Rather's Evening News and 48 Hours.

**ACCCESIBLE HANDWRITING IDENTIFICATION EQUIPMENT:**

- Apollo 18" x 12 ½" Light Table
- Leica 2000 Zoom Stereoscopic Microscope
- Forensic photography equipment, including Nikon 6006
- Magnification Loops, Measuring Devices Caliper, Grids and Gauges
- UV Light for determination of Paper Substitutions and Authentication
- Various Oblique lighting apparatuses for identifying Indented Writing, Inks and Obliterated writing

VIRGINIA LAWYERS WEEKLY

Vol. XIII, No. 44 April 5, 1999 http://www.virginialaw.com

# Analyzing penmanship



CINA L. WONG

Cina L. Wong was a teenager in boarding school when she first experienced the FBI truism: "There is more crime committed at the point of a pen than at the end of a gun."

A group of girls had targeted her for harassment, Wong said. They mugged her, cut her with fingernail clippers and left her bleeding and unconscious. The incident was followed by a series of notes with death threats.

The headmaster collected the notes from her and promised to have them analyzed by a police handwriting expert. The matter was never resolved to Wong's satisfaction. But the experience led her to resolve that she would become the best handwriting expert in the United States, to keep herself and others from being victimized.

Her quest led her from her native California to Norfolk, where she studied under David S. Liebman.

Now 36, Wong boasts a resume that reflects solid training and experience in document examination. Her teachers have included experts from the FBI, the U.S. Secret Service, and a specialist in how handwriting can be affected by health problems and medications.

She currently is vice president of the National Association of Document Examiners, and she has qualified in numerous courts nationwide as an expert in the many forms document forgeries can take.

In one Virginia case, she was able to link the writer of racist hate notes to a message scratched onto the side of the victim's Mercedes. In a New York case, she was able to send police into the headquarters of a life insurance scam that targeted Jews with a detailed description of the dot-matrix printer that had produced the paperwork in the scam.

Wong's most publicized case so far involves the murder of 6-year-old JonBenet Ramsey of Boulder, Colo. She and Liebman were hired by a self-styled victim's rights attorney to compare a copy of the three-page ransom note in the case with samples that the lawyer said were written by JonBenet's mother, Patsy. The lawyer, Darnay Hoffman of New York, has sued to force a prosecution in the case.

Wong opined that the note matched the sample on 30 points, and that the writer of the samples probably wrote the ransom note with the opposite hand. Such details as teardrop-shaped rounded letters, such as "o" and "b," curved exclamation points, and "g's" with the tail shaped as a right angle were consistent between samples and notes.

Wong asserts that she believes there is a 95 percent likelihood that, if Patsy Ramsey produced the samples, she also wrote the ransom note. Hoffman has included their findings in documents related to his suit, but so far Wong and Liebman have not been called to present their findings to the grand jury in the case.

Meanwhile, Wong has added a new job to her busy schedule— selling pens at the Colorado Pen Company's store at the new MacArthur Mall in downtown Norfolk. There, she not only has an opportunity to hand out her business card to lawyers who come in to shop, but she continues to educate herself as she watches customers test the pens.

She observes how they hold the pens, how they move their hands and arms, and the characteristics of different inks and manufacturers.

You never know when the observations might lead to an epiphany in a case, she said.

— *Dawn Chase*

*Cina L. Wong*, BCDE, Vice President of the National Assoc. of Document Examiners
Ph: (757) 622-9606 E-mail: NOFORGERY@aol.com

USA TODAY

A · FRIDAY, DECEMBER 26, 1997 · USA TODAY

THE NATION

# No closure in Boulder



AP

One year ago, 6-year-old JonBenet Ramsey was found killed in her home. Today, the case remains as baffling and disturbing as it ever was.

By Patrick O'Driscoll
USA TODAY

BOULDER, Colo. — One ear later, gawkers still drive y the faux Tudor mansion where JonBenet Ramsey died.

Her family moved months go, and the $1.2 million home s for sale. But the tourists keep coming — mesmerized by the mystery of who killed the 6-ear-old beauty queen.

"People will go up and pretend to knock on the door, and ook over their shoulder at the amera," says Patricia Nelson Limerick, a University of Colorado history professor who ives across the street. "It's as if hey're having an outing to an musement park."

The case has taken everyone connected with it on a oller-coaster ride.

"Either this was the most orrific crime, committed by arents on their own flesh and lood, or the Ramseys have een totally victimized by the vents of last Christmas," says raig Silverman, a former Denver prosecutor.

Last week came the first ew scrap of information in nonths: The Ramsey family onfirmed that a "stun gun" as somehow involved in the urder of the girl. Police have een asking neighbors whether hey own one of the high-voltge devices, used to immobilze a person. The Ramseys ever had such a weapon, pokesmen have said.

Neighbor Margaret Dillon ays she was "flabbergasted" o be asked a year later about a un gun. "If it's critical to the ase, why wasn't it mentioned efore?"

Police wouldn't comment on hat or whether JonBenet's auopsy showed evidence of a un-gun attack.

The investigation has had its noments of drama. In Februry, Boulder District Attorney lex Hunter glared into the TV amera. Addressing the unnown killer, he vowed: "We're oing to solve this case. We will ee that justice is served, and hat you will pay for what ou've done to this beautiful litle girl."

Many doubt it. Others preict a grand jury will convene arly next year, if only to put he matter to rest by either inicting someone or shelving he case for lack of evidence.



By David Zalubowski, AP

December 1996: Officers stand guard outside the home in Boulder, Colo., where JonBenet Ramsey was found beaten and strangled.




KUSA via CNN, AP

Parents' plea: In May 1997, John and Patsy Ramsey held a TV interview in which they offered a $100,000 reward.

JonBenet Ramsey, named for her father, John Bennett Ramsey, was the reigning Little Miss Colorado when she was found beaten and strangled the morning after Christmas 1996.

Her mother, Patsy Ramsey, had phoned 911 at 5:52 a.m. to report that her daughter was gone and that she had found a three-page ransom note.

Investigating the case as a kidnapping, police didn't search the home thoroughly, waiting instead for a kidnapper to call. At about 1 p.m., a detective suggested to John Ramsey that he look the house over once again. Minutes later, Ramsey and a friend turned on the light in a little-used basement room and found JonBenet's body on the concrete floor. She was gagged with duct tape, and a crude nylon garrote circled her neck, tightened with a broken wooden paintbrush.

> "We're going to solve this case. We will see that justice is served, and that you will pay for what you've done to this beautiful little girl."
>
> — Alex Hunter, Boulder district attorney, addressing the killer



By David Zalubowski, AP

Ripping the tape from her mouth, Ramsey gathered her up and took her upstairs, potentially contaminating evidence at the murder scene and perhaps on her body.

Since then, critics have attacked Boulder police for botching the earliest, most critical period of the investigation.

Within hours of discovering her body, the Ramseys had hired lawyers. Within a week they hired a private investigator and a public relations expert. The family offered a $100,000 reward and even ran Sunday advertisements in Colorado newspapers seeking tips.

Boulder Police Chief Tom Koby, who has acknowledged mistakes in the investigation, is stepping down next year.

"It is accurate to say that if we had it to do all over again, we would do it differently," he says. "What was in front of us was a kidnapping. We pursued that until we understood that we had something different."

The investigation has been exhaustive and exhausting. Police have compiled more than 18,000 pages of files. They traveled to Atlanta, where the family had lived until 1991, to interview relatives and friends the week after the murder.

And they took five samples of Patsy Ramsey's handwriting to compare with the ransom note, whose demand for $118,000 was about the size of the bonus John Ramsey had received as president of Access Graphics, a $1 billion Boulder computer company.

The Colorado Bureau of Investigation reported that the handwriting tests were "inconclusive." But New York lawyer Darnay Hoffman, who sued to force a prosecution in the case, says an analysis by handwriting expert Cina Wong shows a high probability the handwriting was Patsy Ramsey's.

This month, lead investigator Cmdr. Mark Beckner, who took over the investigation this fall, said his team was working through a checklist of more than 70 items. The list includes re-interviewing significant witnesses to re-testing some items of evidence.

Throughout the investigation, police have said they have no official suspects. But Beckner said at his news conference Dec. 5 that the Ramseys remain under "an umbrella of suspicion."

He also said his team has asked to re-interview the Ramseys and JonBenet's brother, Burke, 10, the only other person in the house the night of the murder. But one of the Ramseys' legal representatives said last week that the family won't take up the issue of more interviews until after the new year.

Contributing: Steve Marshall in Washington

Mr. Ramsey,

Listen carefully! We are a group of individuals that represent a small foreign faction. We ~~[illegible]~~ respect your bussiness but not the country that it serves. At this time we have your daughter in our posession. She is safe and unharmed and if you want her to see 1997, you must follow our instructions to the letter.

You will withdraw $118,000.00 from your account. $100,000 will be in $100 bills and the remaining $18,000 in $20 bills. Make sure that you bring an adequate size attache to the bank. When you get home you will put the money in a brown paper bag. I will call you between 8 and 10 am tomorrow to instruct you on delivery. The delivery will be exhausting so I advise you to be rested. If we monitor you getting the money early, we might call you early to arrange an earlier delivery of the -

money and hence a cashier ~~[illegible]~~ pick-up of your daughter.
Any deviation of my instructions will result in the immediate execution of your daughter. You will also be denied her remains for proper burial. The two gentlemen watching over your daughter do not particularly like you so I advise you not to provoke them.
Speaking to anyone about your situation, such as Police, F.B.I., etc., will result in your daughter being beheaded. If we catch you talking to a stray dog, she dies. If you alert bank authorities, she dies.
If ~~the~~ money is in any way marked or tampered with, she dies. You will be scanned for electronic devices and if any are found, she dies. You can try to deceive us but be warned that we are familiar with Law enforcement countermeasures and tactics. You stand a 99% chance of killing your daughter if you try to out smart us. Follow our instructions

and you stand a 100% chance of getting her back. You and your family are under constant scrutiny as well as the authorities. Don't try to grow a brain John. You are not the only fat cat around so don't think that killing will be difficult. Don't underestimate us John. Use that good southern common sense of yours. It is up to you now John!

Victory!

S.B.T.C




*Cina L. Wong and Associates. Ltd.*
***Court Qualified and Board Certified Forensic Handwriting Expert***
*(757) 622-9606/Fax 622-9585 • NOFORGERY@aol.com*

# Exhibit No. 4

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

WJH
Docket No. 1160-06
15 February 2006

LOURDES A. HYDE
6020 CALIFORNIA CIRCLE #213
ROCKVILLE MD 20852

Dear MRS. HYDE:

In April 2005 you petitioned the Board for Correction of Naval Records (BCNR) to amend your late husband's records to show that he elected to participate in the Survivor Benefit Plan (SBP) retroactively back to May 1996. Your petition was dated 20 May 2005 and was received on 29 April 2005. In your petition you averred that the signature on the DD Form 2366 of 12 May 1996 (concurring with your husband's decision to decline coverage under the SBP) was not yours.

A three-member panel of the Board sitting in executive session considered your application on 7 September 2005. Your allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of the Board. After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice. Accordingly, your petition was denied.

In November 2005, you submitted additional materials that had not been included in your first request. Because of the possibility that the new materials might have an impact on the outcome of the prior Board, on 7 February 2006, a second panel of the Board considered the entire matter again. The allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of this Board. Documentary material considered by the Board consisted of your initial application (together with all material submitted in support thereof), the supplementary materials submitted in November 2005, your deceased spouse's

naval record, a DD Form 2656 executed and witnessed on 12 May 1996, and the applicable statutes, regulations and policies relating to the Survivor Benefit Plan. In addition, the Board considered the advisory opinions furnished by NPC memo 5420 P00J1/ of 17 Jan 06 and the earlier NPC memo of 17 August 2005 copies of which are attached.

After careful and conscientious consideration of the entire record, the Board unanimously found that the evidence submitted was still insufficient to establish the existence of probable material error or injustice. Accordingly, your application has been denied. In this connection, the Board substantially concurred with the comments contained in the advisory opinion and also noted the following material aspects of your case.

A review of your husband's records pertaining to his SBP election shows a signed a DD Form 2656 dated 12 May 1996 in which block 28g electing "not to participate in SBP" is specifically checked off. The election made by your husband on the DD Form 2656 was witnessed by Mr. Ernest R. Walker.

Your husband's records also show a signature in block 35 of the DD Form 2656. That block is used to indicate "spousal concurrence" with the service member's election. You aver that block 35 was filled in by someone else who fraudulently signed your name. However, Mr. Walker also served as a witness for the completion of that block as well.

Your husband's records also show that, in accordance with your husband's election (and the spousal concurrence indicated in block 35), Petty Officer Reginald Hyde was not enrolled in the SBP. He paid no SBP premiums after his transfer to the Fleet Reserve (i.e. he was paid his full retirement pay and his full retirement pay was not reduced to pay any SBP premiums). He was provided with periodic written retiree account statements showing that he was not participating in SBP. Finally, there is no evidence in your husband's record or in your petition that Petty Officer Hyde or you desired or requested to change the election in the nine plus years that elapsed after his transfer to the Fleet Reserve (May 1996) and his death (February 2005) during which time he was receiving full retirement pay. Rather, the first indication that a change was sought came from you two months after your husband's death and after his retirement pay stopped.

The Board carefully considered your contention that the signature in Block 35 of the DD Form 2656 dated 12 May 1996 is not yours. However, considering all the evidence together, the Board found that there was insufficient evidence to show that there was any error or injustice with your husband's election to decline SBP coverage, and insufficient evidence to show that there was any error or injustice in memorializing the spousal concurrence with that decision. Accordingly, your application has been denied.

It is regretted that the circumstances of your case are such that favorable action cannot be taken.

Sincerely,

W. Dean Pfeiffer

W. DEAN PFEIFFER
Executive Director

Enclosures

# Exhibit No. 5

DEPARTMENT OF THE NAVY
NAVY PERSONNEL COMMAND
5720 INTEGRITY DRIVE
MILLINGTON TN 38055-0000

5420
P00J1/
17 Jan 2006

From: Office of Legal Counsel (Pers-00J1)
To: Executive Director, Board for Correction for Naval Records
Via: Assistant for BCNR Matters, Pers-31C

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN CASE OF PO2 REGINALD P. HYDE, USN RET, DEC, XXX-XX-5625

Encl: (1) BCNR File with cover memo dtd 9 Dec 2005

1. This responds to your request (enclosure (1)) for comments and recommendation on subject Board for Correction of Naval Records (BCNR) petition. I have reviewed enclosure (1) and recommend applicant's petition again be denied.[1] The bases for this recommendation are set forth below.

2. <u>Facts</u>: Applicant, Mrs. Lourdes Hyde, is the widow of PO2 Reginald P. Hyde, USN (retired) (deceased). Her petition asks BCNR to amend decedent's Naval records to reflect a spousal SBP election effectively creating associated SBP entitlement from 13 Dec 2005 to present.[2] Applicant avers that she never gave consent as required by law.[3] Decedent's service records reflect transfer to the Fleet Reserve on 31 May 1996 and declination of SBP coverage with spousal consent.[4] Applicant asserts her signature in the record reflecting her concurrence is forged. Applicant now offers "new" expert opinion evidence of a document examiner to support her claim.

3. <u>Issue</u>: Whether applicant's evidence is sufficient to overcome presumption of regularity of Naval records?

4. <u>Short Answer</u>: No.

5. <u>Discussion</u>:

Like plaintiffs in *Barber v. United States*, 230 Cl.Ct. 287; 676 F.2d 651 (1982); *Dean v. United States*, 10 Cl.Ct. 563 (1986); and *McCarthy v. United States*, 10 Cl.Ct. 573 (1986); applicant's position is that decedent's attempt to

[1] BCNR denied Applicant's initial petition by letter dated 7 Sep 2005
[2] Decedent passed away 12 Dec 2005.
[3] 10 U.S.C. 1448(a)(3).
[4] DD Form 2656 dtd 12 May 1996

elect out of the Survivor Benefit Plan was improperly effected because she, as his spouse, was not notified of decedent's intentions. In *Barber*, the Air Force records did not contain evidence of notification and the Air Force agent's faded recollection did not permit him to specifically recall a spousal notification letter being sent to the plaintiff. In *Dean* and *McCarthy*, Air Force "short sighted" records policy resulted in destruction of evidence of notification. Here, decedent's Naval record contains evidence of spousal notification and concurrence.

Pursuant to SECNAVINST 5420.193, Enclosure (1), Section 3, e.(2), BCNR, "relies on a presumption of regularity to support the official actions of public officers and, in the absence of *substantial evidence* to the contrary, will presume that they have properly discharged their official duties." (Emphasis added). The burden is on the applicant to overcome this presumption. In *Dean* the court noted, "although a presumption for defendant may have existed, plaintiff's presumption defeating affidavit has not been controverted by the defendant." *Dean*, at 572. Succinctly put, the Air Force had no records. That is not the case here. Here, applicant asserted no spousal notification of decedent declining SBP coverage as required by law. In response, the Navy produced record evidence of spousal notification, to wit: her witness signature of consent. Consequently, applicant's initial BCNR application was denied.

Now applicant offers up paid expert opinion evidence consisting of a 2-page letter dated 14 October 2005 in which the writer opines, "that the hand that authored the known Standards for Comparison S16-S30, is NOT the same hand that signed the signature "Lourdes A. Hyde" in the Questioned Document (Q1). This alone does not constitute "wee-nigh irrefragable proof" to overcome the presumption of regularity. *Loftin v. United States*, 6 Cl.Ct. 596, 608 (1984), *aff'd*, 765 F.2d 1117 (Fed.Cir. 1985).[5] While expert opinion of the documents examiner retained by the applicant should be accorded due consideration, it alone does not reach much less pass the threshold of "substantial evidence" to overcome the presumption.

---

[5] The author recognizes that applicant may have done so in response to the Pers-62B advisory opinion dtd 18 May 2005. That opinion referenced a case in which DFAS-CL obtained an affidavit from the spouse indicating that her signature was forged and a similar affidavit from the witness shown on the form.

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN CASE OF PO2 REGINALD P. HYDE, USN RET, DEC, XXX-XX-5625

6. <u>Conclusion</u>: For the foregoing reasons, recommend applicant's petition be denied.

7. Please call me at DSN 882-3163 or (901) 874-3163 if you have any questions.

Steven P. Hester
Assistant Legal Counsel

Attorney-Client Communication and/or Work Product

DEPARTMENT OF THE NAVY
NAVY PERSONNEL COMMAND
5720 INTEGRITY DRIVE
MILLINGTON TN 38055-0000

17 Aug 05

MEMORANDUM FOR EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF NAVAL RECORDS

Via: Assistant for BCNR Matters (PERS-3LC2)

Subj: COMMENTS AND RECOMMENDATIONS ICO PO2 REGINALD P. HYDE, USN(RET.)(DECEASED), 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, DOCKET NO. 03470-05

Ref: (a) Department of Defense Financial Management Regulation (Vol 7B)

1. Per reference (a), recommend the BCNR not correct PO2 Hyde's record to reflect that he enrolled in the Survivor Benefit Plan (SBP) prior to transferring to the Fleet Reserve.

2. The recommendation is based on the following:

a. PO2 Hyde transferred to the Fleet Reserve on 31 May 1996. He declined participation in the SBP at that time. He died on 12 February 2005.

b. Reference (a) states in part that a married member is enrolled with spouse coverage based on full-retired pay at the time of retirement unless that spouse has concurred in writing to another election requested by the member. When the spouse's concurrence is required, one or more witnesses must corroborate the signature indicating concurrence. If all requirements for an election needing the spouse's concurrence have not been satisfied prior to retirement, for whatever reason, full spouse costs and coverage will be implemented, regardless of any request by the member to do otherwise.

c. Mrs. Hyde alleges that she was unaware and did not provide written concurrence with her husband's election to decline participation in the SBP. She currently claims that her signature was forged, though she provided no documentation to verify her claim. Currently government records bear a presumption of regularity as well as that the official actions of public officers responsible for keeping those records have performed their duties in a regular and proper manner. The written concurrence of Mrs. Hyde was witnessed by Mr. Ernest R. Walker. The Navy Personnel Command is not an investigative body, and with that thought in mind, it obligated

Subj: COMMENTS AND RECOMMENDATIONS ICO PO2 REGINALD P. HYDE, USN(RET.)(DECEASED), 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, DOCKET NO. 03470-05

to provide an advisory opinion based on the information provided with an individual's application. As stated previously, the burden of proving that a forgery exists in this particular case rests with Mrs. Hyde and not that Navy. Additionally, as the applicant she must gather and present evidence to substantiate her claim.

2. It should be noted that there has been no substantive evidence provided to support the claim of a forgery which allegedly occurred nearly ten years ago. Should Mrs. Hyde obtain additional evidence to support her contention that a forgery occurred she should resubmit her application based on that new and or additional material.

V. G. RASPA
Deputy Director
Casualty Assistance Division
(PERS-62B)

# Exhibit No. 6

DEPARTMENT OF THE NAVY
OFFICE OF THE SECRETARY
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

SECNAVINST 5420.193
BCNR
19 November 1997

SECNAV INSTRUCTION 5420.193

From: Secretary of the Navy
To: All Ships and Stations

Subj: BOARD FOR CORRECTION OF NAVAL RECORDS

Ref: (a) 10 U.S.C. § 1552
(b) U.S. Navy Regulations, 1990, Article 0324
(c) 10 U.S.C. § 5016
(d) SECNAVINST 5211.5D, DON Privacy Act Program
(e) 10 U.S.C. § 1034
(f) DOD Directive 7050.6, Military Whistleblower Protection of 12 Aug 95 (NOTAL)
(g) SECNAVINST 5370.7A, Military Whistleblower Protection of 27 Sep 94

Encl: (1) Procedures of the Board for Correction of Naval Records
(2) DD 149, Application for Correction of Military Record Under the Provisions of title 10, U.S.C. Section 1552
(3) Applicant's Guide

1. Purpose. To establish procedures for making application and the consideration of applications for correction of military records of current and former members of the Navy and Marine Corps by the Secretary of the Navy acting through the Board for Correction of Naval Records (BCNR) under reference (a).

2. Cancellation. NAVSO P-473 of 28 November 1977. All other regulations and memoranda providing guidance on policies or procedures of BCNR, and delegations of authority inconsistent with this instruction, are cancelled.

3. Action

a. BCNR shall consider and either take corrective action on the Secretary's behalf, when authorized, or make appropriate recommendations to the Secretary regarding applications for the correction of military records following the procedures in enclosure (1).

b. The Assistant Secretary of the Navy (Manpower and Reserve Affairs), under references (b) and (c), has been assigned the responsibility for the overall supervision of BCNR and is

*0577LD011420*

delegated authority to take final action on BCNR cases forwarded for review.

c. The Executive Director, BCNR shall administer and oversee the operation of BCNR. The Executive Director shall be subject to the supervision and administrative control of the Assistant Secretary of the Navy (Manpower and Reserve Affairs).

d. Department of the Navy facilities of all commands, bureaus, offices, and boards shall be made available to BCNR to assist it, upon request, in the performance of its duties consistent with applicable statutes and regulations. Requests for records and/or advisory opinions should under normal circumstances be acted upon within 60 days of receipt of BCNR's request.

4. Execution of BCNR Decisions. The Chief of Naval Operations and the Commandant of the Marine Corps shall ensure that action is taken to make the military record corrections directed by the Secretary or BCNR. The applicant and Executive Director will be advised of the action taken.

5. Administrative Correction of Personnel Records. To enhance efficiency and minimize requirements for BCNR actions where possible, the Chief of Naval Operations and the Commandant of the Marine Corps will ensure that obvious clerical or administrative errors are corrected locally under the authority of reference (d) to the extent permitted by law and regulation.

6. Changes in Procedures. BCNR may recommend changes to enclosure (1). Changes must be approved by the Secretary of the Navy and the Secretary of Defense. Enclosure (1) and all approved changes thereto will be published in the Federal Register.

7. Application. Applications to BCNR for correction of naval records must be submitted on DD 149, Application for Correction of Military Record, or exact facsimile. Enclosure (2) is a copy of DD 149. Enclosure (3) provides information to prospective applicants regarding the procedures governing the submission and processing of applications. In processing applications alleging violations of reference (e) there will be strict compliance with the provisions of references (f) and (g).

8. Report and Form

a. The reporting requirements contained in enclosure (1) are exempt from reports control by SECNAVINST 5214.2B

b. Due to low usage DD 149 (Sep 97), Application for Correction of Military Records Under the Provisions of title 10, U.S.C., section 1552, provided as enclosure (2), may be locally reproduced.

Bernard Rostker

BERNARD ROSTKER
Assistant Secretary of the Navy
(Manpower and Reserve Affairs)

Distribution:
SNDL Parts 1 and 2
MARCORPS Codes PCN 7100000000 and 71000000100

BUPERS (Pers-3)
(100 copies)

SECNAV/OPNAV DIRECTIVES CONTROL OFFICE
WASHINGTON NAVY YARD BUILDING 200
901 M STREET SE
WASHINGTON DC 20374-5074 (30 copies)

Order from:
Naval Inventory Control Point
Cog "I" Material
700 Robbins Avenue
Philadelphia PA 19111-5098

Stocked: (200 copies)

# PROCEDURES

# OF

# THE BOARD FOR

# CORRECTION OF NAVAL RECORDS

# ESTABLISHED TO REVIEW

# NAVAL RECORDS UNDER

# 10 U.S.C. 1552

(Codified as 32 CFR 723)

Revised 24 February 1997

Enclosure (1)

PROCEDURES

Section 1. GENERAL PROVISIONS

2. ESTABLISHMENT, FUNCTION AND JURISDICTION OF THE BOARD
   a. Establishment and Composition
   b. Function
   c. Jurisdiction

3. APPLICATION FOR CORRECTION
   a. General Requirements
   b. Time Limit for Filing Applications
   c. Acceptance of Applications
   d. Other Proceedings Not Stayed
   e. Consideration of Application

4. APPEARANCE BEFORE THE BOARD: NOTICE; COUNSEL; WITNESSES; ACCESS TO RECORDS
   a. General
   b. Notice
   c. Counsel
   d. Witnesses
   e. Access to Records

5. HEARING
   a. Convening of Board
   b. Conduct of Hearing
   c. Continuance

6. ACTION BY THE BOARD
   a. Deliberations, Findings, Conclusions and Recommendations
   b. Minority Report
   c. Record of Proceedings
   d. Withdrawal
   e. Delegation of Authority to Correct Certain Naval Records

7. ACTION BY THE SECRETARY
   a. General
   b. Military Whistleblower Protection Act

8. STAFF ACTION
   a. Transmittal of Final Decisions Granting Relief
   b. Transmittal of Final Decisions Denying Relief

9. RECONSIDERATION

10. SETTLEMENT OF CLAIMS
   a. Authority
   b. Application for Settlement
   c. Settlement
   d. Report of Settlement

11. MISCELLANEOUS
   a. Expenses
   b. Indexing of Decisions

Section 1. GENERAL PROVISIONS

These regulations establish procedures for correction of naval and marine records by the Secretary of the Navy acting through the Board for Correction of Naval Records (BCNR or the Board) to remedy error or injustice. It describes how to apply for correction of naval and marine records and how the BCNR considers applications. It defines the Board's authority to act on applications. It directs collecting and maintaining information subject to the Privacy Act of 1974 authorized by 10 U.S.C. 1034 and 1552.

Section 2. ESTABLISHMENT, FUNCTION AND JURISDICTION OF THE BOARD

a. ESTABLISHMENT AND COMPOSITION

Under the foregoing statutory authority, the Board for Correction of Naval Records is established by the Secretary of the Navy. The Board consists of civilians of the executive part of the Department of the Navy in such number, not less than three, as may be appointed by the Secretary and who shall serve at the pleasure of the Secretary. Three members present shall constitute a quorum of the Board. The Secretary of the Navy will designate one member as Chair. In the absence or incapacity of the Chair, an Acting Chair chosen by the Executive Director shall act as Chair for all purposes.

b. FUNCTION

The Board is not an investigative body. Its function is to consider applications properly before it for the purpose of determining the existence of error or injustice in the naval records of current and former members of the Navy and Marine Corps, to make recommendations to the Secretary or to take corrective action on the Secretary's behalf when authorized.

c. JURISDICTION

The Board shall have jurisdiction to review and determine all matters properly brought before it, consistent with existing law.

Section 3. APPLICATION FOR CORRECTION

a. GENERAL REQUIREMENTS

(1) The application for correction must be submitted on DD 149 (Application for Correction of Military Record) or exact facsimile thereof, and should be addressed to: Board for Correction of Naval Records, Department of the Navy, 2 Navy Annex, Washington, DC 203705100. Forms and other explanatory matter may be obtained from the Board upon request.

(2) Except as provided in paragraph (3) of this section, the application shall be signed by the person requesting corrective action with respect to his/her record and will either be sworn to or will contain a provision to the effect that the statements submitted in the application are made with full knowledge of the penalty provided by law for making a false statement or claim. (18 U.S.C. § 287 and § 1001).

(3) When the record in question is that of a person who is incapable of making application, or whose whereabouts is unknown, or when such person is deceased, the application may be made by a spouse, parent, heir, or legal representative. Proof of proper interest shall be submitted with the application.

b. TIME LIMIT FOR FILING APPLICATION. Applications for correction of a record must be filed within 3 years after discovery of the alleged error or injustice. Failure to file within the time prescribed may be excused by the Board if it finds it would be in the interest of justice to do so. If the application is filed more than 3 years after discovery of the error or injustice, the application must set forth the reason why the Board should find it in the interest of justice to excuse the failure to file the application within the time prescribed.

c. ACCEPTANCE OF APPLICATIONS. An application will be accepted for consideration unless:

(1) The Board lacks jurisdiction.

(2) The Board lacks authority to grant effective relief.

(3) The applicant has failed to comply with the filing requirements of paragraphs a(1), a(2) or a(3) of this section.

(4) The applicant has failed to exhaust all available administrative remedies.

(5) The applicant has failed to file an application within 3 years after discovery of the alleged error or injustice and has not provided a reason or reasons why the Board should find it in the interest of justice to excuse the failure to file the application within the prescribed 3-year period.

d. OTHER PROCEEDINGS NOT STAYED. Filing an application with the Board shall not operate as a stay of any other proceedings being taken with respect to the person involved.

e. CONSIDERATION OF APPLICATION

(1) Each application accepted for consideration and all pertinent evidence of record will be reviewed by a three member panel sitting in executive session, to determine whether to authorize a hearing, recommend that the records be corrected without a hearing, or to deny the application without a hearing. This determination will be made by majority vote.

(2) The Board may deny an application in executive session if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice. The Board relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties. Applicants have the burden of overcoming this presumption but the Board will not deny an application solely because the record was made by or at the direction of the President or the Secretary in connection with proceedings other than proceedings of a board for the correction of military or naval records. Denial of an application on the grounds of insufficient evidence to demonstrate the existence of probable material error or injustice is final subject to the provisions for reconsideration contained in Section 9 of these procedures.

(3) When an original application or a request for further consideration of a previously denied application is denied without a hearing, the Board's determination shall be made in writing and include a brief statement of the grounds for denial.

(4) The brief statement of the grounds for denial shall include the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based, including, if applicable, factors required by regulation to be considered for determination of the character of and reason for discharge. Further the Board shall make a determination as to the applicability of the provisions of the Military Whistleblower Protection Act (10 U.S.C. § 1034) if it is invoked by the applicant or reasonably raised by the evidence. Attached to the statement shall be any advisory opinion considered by the Board which is not fully set out in the statement. The applicant will also be advised of reconsideration procedures.

(5) The statement of the grounds for denial, together with all attachments, shall be furnished promptly to the applicant and counsel, who shall also be informed that the name and final vote of each Board member will be furnished or made available upon request. Classified or privileged material will not be incorporated or attached to the Board statement; rather, unclassified or nonprivileged summaries of such material will be so used and written explanations for the substitution will be provided to the applicant and counsel.

Section 4. APPEARANCE BEFORE THE BOARD; NOTICE; COUNSEL; WITNESSES; ACCESS TO RECORDS.

a. GENERAL. In each case in which the Board determines a hearing is warranted, the applicant will be entitled to appear before the Board either in person or by counsel of his/her selection or in person with counsel. Additional provisions apply to cases processed under the Military Whistleblower Protection Act (10 U.S.C. § 1034.)

b. NOTICE

(1) In each case in which a hearing is authorized, the Board's staff will transmit to the applicant a written notice

stating the time and place of hearing. The notice will be mailed to the applicant, at least 30 days prior to the date of hearing, except that an earlier date may be set where the applicant waives his/her right to such notice in writing.

(2) Upon receipt of the notice of hearing, the applicant will notify the Board in writing at least 15 days prior to the date set for hearing as to whether he/she will be present at the hearing and will indicate to the Board the name of counsel, if represented by counsel, and the names of such witnesses as he/she intends to call. Cases in which the applicant notifies the Board that he/she does not desire to be present at the hearing will be considered in accordance with Section 5b(2).

c. COUNSEL. As used in these regulations, the term "counsel" will be construed to include members in good standing of the federal bar or the bar of any state, accredited representatives of veterans' organizations recognized by the Secretary of Veterans Affairs under 38 U.S.C. § 3402, or such other persons who, in the opinion of the Board, are considered to be competent to present equitably and comprehensively the request of the applicant for correction, unless barred by law. Representation by counsel will be at no cost to the government.

d. WITNESSES. The applicant will be permitted to present witnesses in his/her behalf at hearings before the Board. It will be the responsibility of the applicant to notify his/her witnesses and to arrange for their appearance at the time and place set for hearing. Appearance of witnesses will be at no cost to the government.

e. ACCESS TO RECORDS

(1) It is the applicant's responsibility to procure such evidence not contained in the official records of the Department of the Navy as he/she desires to present in support of his/her case.

(2) Classified or privileged information may be released to applicants only by proper authorities in accordance with applicable regulations.

(3) Nothing in these regulations authorizes the furnishing of copies of official records by the Board. Requests for copies of official records should be submitted in accordance with regulations governing the release of information. The Board can provide a requester with information regarding procedures for requesting copies of these records from the appropriate retention agency.

Section 5. HEARING

a. CONVENING OF BOARD. The Board will convene, recess and adjourn at the call of the Chair or Acting Chair.

b. CONDUCT OF HEARING

(1) The hearing shall be conducted by the Chair or Acting Chair, and shall be subject to his/her rulings so as to ensure a full and fair hearing. The Board shall not be limited by legal rules of evidence but shall maintain reasonable bounds of competency, relevancy, and materiality.

(2) If the applicant, after being duly notified, indicates to the Board that he/she does not desire to be present or to be represented by counsel at the hearing, the Board will consider the case on the basis of all the material before it, including, but not limited to, the application for correction filed by the applicant, any documentary evidence filed in support of such application, any brief submitted by or in behalf of the applicant, and all available pertinent records.

(3) If the applicant, after being duly notified, indicates to the Board that he/she will be present or be represented by counsel at the hearing, and without good cause and timely notice to the Board, the applicant or representative fails to appear at the time and place set for the hearing or fails to provide the notice required by Section 4b(2) of these procedures, the Board may consider the case in accordance with the provisions of paragraph b(2) of this section, or make such other disposition of the case as is appropriate under the circumstances.

(4) All testimony before the Board shall be given under oath or affirmation. The proceedings of the Board and the testimony given before it will be recorded verbatim.

c. CONTINUANCE. The Board may continue a hearing on its own motion. A request for continuance by or in behalf of the applicant may be granted by the Board if a continuance appears necessary to insure a full and fair hearing.

Section 6. ACTION BY THE BOARD

a. DELIBERATIONS, FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS

(1) Only members of the Board and its staff shall be present during the deliberations of the Board.

(2) Whenever, during the course of its review of an application, it appears to the Board's satisfaction that the facts have not been fully and fairly disclosed by the records or by the testimony and other evidence before it, the Board may require the applicant or military authorities to provide such further information as it may consider essential to a complete and impartial determination of the facts and issues.

(3) Following a hearing, or where the Board determines to recommend that the record be corrected without a hearing, the Board will make written findings, conclusions and recommendations. If denial of relief is recommended following a hearing, such written findings and conclusions will include a statement of the grounds for denial as described in Section 3e(4). The name and final vote of each Board member will be recorded. A majority vote of the members present on any matter before the Board will constitute the action of the Board and shall be so recorded.

(4) Where the Board deems it necessary to submit comments or recommendations to the Secretary as to matters arising from but not directly related to the issues of any case, such comments and recommendations shall be the subject of separate communication. Additionally, in Military Whistleblower Protection Act cases, any recommendation by the Board to the Secretary that disciplinary or administrative action be taken against any Navy official based on the Board's determination that the official took reprisal action against the applicant will not be made part of the Board's record of proceedings or furnished the applicant but will be transmitted to the Secretary as a separate communication.

b. MINORITY REPORT. In case of a disagreement between members of the Board a minority report will be submitted, either as to the findings, conclusions or recommendation, including the reasons therefore.

c. RECORD OF PROCEEDINGS. Following a hearing, or where the Board determines to recommend that the record be corrected without a hearing, a record of proceedings will be prepared. Such record shall indicate whether or not a quorum was present, and the name and vote of each member present. The record shall include the application for relief, a verbatim transcript of any testimony, affidavits, papers and documents considered by the Board, briefs and written arguments, advisory opinions, if any, minority reports, if any, the findings, conclusions and recommendations of the Board, where appropriate, and all other papers, documents, and reports necessary to reflect a true and complete history of the proceedings.

d. WITHDRAWAL. The Board may permit an applicant to withdraw his/her application without prejudice at any time before its record of proceedings is forwarded to the Secretary.

e. DELEGATION OF AUTHORITY TO CORRECT CERTAIN NAVAL RECORDS

(1) With respect to all petitions for relief properly before it, the Board is authorized to take final corrective action on behalf of the Secretary, unless:

(a) Comments by proper naval authority are inconsistent with the Board's recommendation;

(b) The Board's recommendation is not unanimous; or

(c) It is in the category of petitions reserved for decision by the Secretary of the Navy.

(2) The following categories of petitions for relief are reserved for decision by the Secretary of the Navy:

(a) Petitions involving records previously reviewed or acted upon by the Secretary wherein the operative facts remained substantially the same;

(b) Petitions by former commissioned officers or midshipmen to change the character of, and/or the reason for, their discharge; or,

(c) Such other petitions as, in the determination of the Office of the Secretary or the Executive Director, warrant Secretarial review.

(3) The Executive Director after ensuring compliance with the above conditions, will announce final decisions on applications decided under this section.

Section 7. ACTION BY THE SECRETARY

a. GENERAL. The record of proceedings, except in cases finalized by the Board under the authority delegated in Section 6e, and those denied by the Board without a hearing, will be forwarded to the Secretary who will direct such action as he or she determines to be appropriate, which may include the return of the record to the Board for further consideration. Those cases returned for further consideration shall be accompanied by a brief statement setting out the reasons for such action along with any specific instructions. If the Secretary's decision is to deny relief, such decision shall be in writing and, unless he or she expressly adopts in whole or in part the findings, conclusions and recommendations of the Board, or a minority report, shall include a brief statement of the grounds for denial. See Section 3e(4) of these procedures.

b. MILITARY WHISTLERBLOWER PROTECTION ACT. The Secretary will ensure that decisions in cases involving the Military Whistleblower Protection Act are issued within 180 days after receipt of the case and will, unless the full relief requested is granted, inform applicants of their right to request review of the decision by the Secretary of Defense. Applicants will also be informed:

(1) Of the name and address of the official to whom the request for review must be submitted.

(2) That the request for review must be submitted within 90 days after receipt of the decision by the Secretary of the Navy.

(3) That the request for review must be in writing and include:

(a) The applicant's name, address and telephone number;

(b) A copy of the application to the Board and the final decision of the Secretary of the Navy;

(c) A statement of the specific reasons the applicant is not satisfied with the decision of the Secretary of the Navy.

(4) That the request must be based on the Board record; request for review based on factual allegations or evidence not previously presented to the Board will not be considered under this paragraph but may be the basis for reconsideration by the Board under Section 9.

Section 8. STAFF ACTION

a. <u>TRANSMITTAL OF FINAL DECISIONS GRANTING RELIEF</u>

(1) If the final decision of the Secretary is to grant the applicant's request for relief the record of proceedings shall be returned to the Board for disposition. The Board shall transmit the finalized record of proceedings to proper naval authority for appropriate action. Similarly final decisions of the Board granting the applicant's request for relief under the authority delegated in Section 6e, shall also be forwarded to the proper naval authority for appropriate action.

(2) The Board shall transmit a copy of the record of proceedings to the proper naval authority for filing in the applicant's service record except where the effect of such action would be to nullify the relief granted. In such cases no reference to the Board's decision shall be made in the service record or files of the applicant and all copies of the record of proceedings and any related papers shall be forwarded to the Board and retained in a file maintained for this purpose.

(3) The addressees of such decisions shall report compliance therewith to the Executive Director.

(4) Upon receipt of the record of proceedings after final action by the Secretary, or by the Board acting under the authority contained in Section 6e, the Board shall communicate the decision to the applicant. The applicant is entitled, upon request, to receive a copy of the Board's findings, conclusions and recommendations.

b. TRANSMITTAL OF FINAL DECISIONS DENYING RELIEF. If the final decision of the Secretary or the Board is to deny relief, the following materials will be made available to the applicant:

(1) A statement of the findings, conclusions, and recommendations made by the Board and the reasons therefor;

(2) Any advisory opinions considered by the Board;

(3) Any minority reports; and

(4) Any material prepared by the Secretary as required in Section 7. Moreover, applicant shall also be informed that the name and final vote of each Board member will be furnished or made available upon request and that he/she may submit new and material evidence or other matter for further consideration.

Section 9. RECONSIDERATION. After final adjudication, further consideration will be granted only upon presentation by the applicant of new and material evidence or other matter not previously considered by the Board. New evidence is defined as evidence not previously considered by the Board and not reasonably available to the applicant at the time of the previous application. Evidence is material if it is likely to have a substantial effect on the outcome. All requests for further consideration will be initially screened by the Executive Director of the Board to determine whether new and material evidence or other matter (including, but not limited to, any factual allegations or arguments why the relief should be granted) has been submitted by the applicant. If such evidence or other matter has been submitted, the request shall be forwarded to the Board for a decision. If no such evidence or other matter has been submitted, the applicant will be informed that his/her request was not considered by the Board because it did not contain new and material evidence or other matter.

Section 10. SETTLEMENT OF CLAIMS

a. AUTHORITY

(1) The Department of the Navy is authorized under 10 U.S.C. § 1552 to pay claims for amounts due to applicants as a result of corrections to their naval records.

(2) The Department of the Navy is not authorized to pay any claim heretofore compensated by Congress through enactment of a private law, or to pay any amount as compensation for any benefit to which the claimant might subsequently become entitled under the laws and regulations administered by the Secretary of Veterans Affairs.

b. APPLICATION FOR SETTLEMENT

(1) Settlement and payment of claims shall be made only upon a claim of the person whose record has been corrected or legal representative, heirs at law, or beneficiaries. Such claim for settlement and payment may be filed as a separate part of the application for correction of the record.

(2) When the person whose record has been corrected is deceased, and where no demand is presented by a duly appointed legal representative of the estate, payments otherwise due shall be made to the surviving spouse, heir or beneficiaries, in the order prescribed by the law applicable to that kind of payment, or if there is no such law covering order of payment, in the order set forth in 10 U.S.C. § 2771; or as otherwise prescribed by the law applicable to that kind of payment.

(3) Upon request, the applicant or applicants shall be required to furnish requisite information to determine their status as proper parties to the claim for purposes of payment under applicable provisions of law.

c. SETTLEMENT

(1) Settlement of claims shall be upon the basis of the decision and recommendation of the Board, as approved by the Secretary or his designee. Computation of the amounts due shall be made by the appropriate disbursing activity. In no case will the amount found due exceed the amount which would otherwise have been paid or have become due under applicable laws had no error

or injustice occurred. Earnings received from civilian employment, self employment or any income protection plan for such employment during any period for which active duty pay and allowances are payable will be deducted from the settlement. To the extent authorized by law and regulation, amounts found due may be reduced by the amount of any existing indebtedness to the Government arising from military service.

(2) Prior to or at the time of payment, the person or persons to whom payments are to be made shall be advised by the disbursing activity of the nature and amount of the various benefits represented by the total settlement and shall be advised further that acceptance of such settlement shall constitute a complete release by the claimants involved of any claim against the United States on account of the correction of the record.

d. REPORT OF SETTLEMENT. In every case where payment is made, the amount of such payment and the names of the payee or payees shall be reported to the Executive Director.

Section 11. MISCELLANEOUS PROVISIONS

a. EXPENSES. No expenses of any nature whatsoever voluntarily incurred by the applicant, counsel, witnesses, or by any other person in the applicant's behalf, will be paid by the Government.

b. INDEXING OF DECISIONS

(1) Documents sent to each applicant and counsel in accordance with Sections 3e(5) and 8a(4), above together with the record of the votes of Board members and all other statements of findings, conclusions and recommendations made on final determination of an application by the Board or the Secretary will be indexed and promptly made available for public inspection and copying at the Armed Forces Discharge Review/Correction Boards Reading Room located on the Concourse of the Pentagon Building in Room 2E123, Washington, DC.

(2) All documents made available for public inspection and copying shall be indexed in a usable and concise form so as to enable the public to identify those cases similar in issue together with the circumstances under and/or reasons for which

the Board and/or Secretary have granted or denied relief. The index shall be published quarterly and shall be available for public inspection and distribution by sale at the Reading Room located on the Concourse of the Pentagon Building in Room 2E123, Washington, DC. Inquiries concerning the index or the Reading Room may be addressed to the Chief, Micromation Branch/Armed Forces Discharge Review/Correction Boards Reading Room, Crystal Mall 4, 1941 Jefferson Davis Highway, Arlington, Virginia 22202.

(3) To the extent necessary to prevent a clearly unwarranted invasion of personal privacy, identifying details of the applicant and other persons will be deleted from the documents made available for public inspection and copying. Names, addresses, social security numbers and military service numbers must be deleted. Deletions of other information which is privileged or classified may be made only if a written statement of the basis for such deletion is made available for public inspection.

Date 8/16/96

Approved by [signature]
Bernard Rostker
Assistant Secretary of the Navy
(Manpower and Reserve Affairs)

Date 10 Jan 97

Approved by [signature]
F. Pang
Assistant Secretary of Defense
(Force Management Policy)

Enclosure (1)

**APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552**
*(Please read instructions on reverse side BEFORE completing application.)*

*Form Approved OMB No. 0704-0003 Expires Aug 31, 2000*

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports (0704-0003), 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.
PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE ADDRESS. RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON THE BACK OF THIS PAGE.

PRIVACY ACT STATEMENT

AUTHORITY: Title 10 US Code 1552, EO 9397.

PRINCIPAL PURPOSE: To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record.

ROUTINE USE(S): None.

DISCLOSURE: Voluntary; however, failure to provide identifying information may impede processing of this application. The request for Social Security number is strictly to assure proper identification of the individual and appropriate records.

1. APPLICANT DATA

a. BRANCH OF SERVICE *(X one)* ☐ ARMY ☐ NAVY ☐ AIR FORCE ☐ MARINE CORPS ☐ COAST GUARD

b. NAME *(Last, First, Middle Initial) (Please print)*

c. PRESENT PAY GRADE

d. SERVICE NUMBER *(If applicable)*

e. SSN

2. TYPE OF DISCHARGE *(If by court-martial, state type of court)*

3. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES *(Active duty, Retired, Reserve, etc.)*

4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY

5. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD

6. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C. *(No expense to the Government) (X one)*
☐ YES ☐ NO

7. COUNSEL *(If any)*

a. NAME *(Last, First, Middle Initial)*

b. ADDRESS *(Street, Apartment Number, City, State and ZIP Code)*

8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE:

9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:

10. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING: *(If Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)*

11. ALLEGED ERROR OR INJUSTICE

a. DATE OF DISCOVERY

b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION.

12. APPLICANT MUST SIGN IN ITEM 16. IF THE RECORD IN QUESTION IS THAT OF A DECEASED OR INCOMPETENT PERSON, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION. IF APPLICATION IS SIGNED BY OTHER THAN APPLICANT, INDICATE RELATIONSHIP OR STATUS BY MARKING APPROPRIATE BOX.
☐ SPOUSE ☐ WIDOW ☐ WIDOWER ☐ NEXT OF KIN ☐ LEGAL REPRESENTATIVE ☐ OTHER *(Specify)*

13. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM. *(U.S. Code, Title 18, Sec. 287, 1001, provides that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

14.a. COMPLETE CURRENT ADDRESS, INCLUDING ZIP CODE *(Applicant should forward notification of all changes of address.)*

b. TELEPHONE NUMBER *(Include Area Code)*

DOCUMENT NUMBER *(Do not write in this space.)*

15. DATE SIGNED

16. SIGNATURE *(Applicant must sign here.)*

DD FORM 149, SEP 1997 PREVIOUS EDITION IS OBSOLETE.

Enclosure (2)

## INSTRUCTIONS

*(All data should be typed or printed)*

1. For detailed information see: Air Force Instruction 36-2603; Army Regulation 15-185; Coast Guard, Code of Federal Regulations; Title 33, Part 52; or Navy, Code of Federal Regulations; Title 32, Part 723.
2. Submit only original of this form.
3. Complete all items. If the question is not applicable, mark "None."
4. If space is insufficient, use "Remarks" or attach additional sheet.
5. Various veterans' and service organizations furnish counsel without charge. These organizations prefer that arrangements for representation be made through local posts or chapters.
6. List all attachments and enclosures.
7. ITEMS 6 AND 7. Personal appearance of you and your witnesses or representation by counsel is not required to ensure full and impartial consideration of applications. Appearances and representations are permitted, at no expense to the Government, when a hearing is authorized.
8. ITEM 8. State the specific correction of record desired.
9. ITEM 9. In order to justify correction of a military record, it is necessary for you to show to the satisfaction of the Board, or it must otherwise satisfactorily appear, that the alleged entry or omission in the record was in error or unjust. Evidence may include affidavits or signed testimony of witnesses, executed under oath, and a brief of arguments supporting application. All evidence not already included in your record must be submitted by you. The responsibility for securing new evidence rests with you.
10. ITEM 11. 10 U.S.C. 1552b provides that no correction may be made unless request is made within three years after the discovery of the error or injustice, but that the Board may excuse failure to file within three years after discovery if it finds it to be in the interest of justice.

## MAIL COMPLETED APPLICATIONS TO APPROPRIATE ADDRESS BELOW

### ARMY

(For Active Duty Personnel)
Army Board for the Correction of Military Records
1941 Jefferson Davis Highway, 2nd Floor
Arlington, VA 22202-4508

(For Other than Active Duty Personnel)
Army Review Boards Agency
Support Division, St. Louis
ATTN: SFMR-RBR-SL
9700 Page Avenue
St. Louis, MO 63132-5200

### COAST GUARD

Chairman
Board for Correction of Military Records (C-60)
Department of Transportation
400 7th St., SW
Washington, DC 20590

### NAVY AND MARINE CORPS

Board for Correction of Naval Records
2 Navy Annex
Washington, DC 20370-5100

### AIR FORCE

Board for Correction of Air Force Records
SAF/MIB
550-C Street West, Suite 40
Randolph AFB, TX 78150-4742

17. REMARKS *(Applicant has exhausted all administrative channels in seeking this correction and has been counseled by a representative of his/her servicing military personnel office. (Applicable only to active duty and reserve personnel.))*

DD FORM 149 (BACK), SEP 1997

Enclosure (2)

AN APPLICANT'S GUIDE TO THE
BOARD FOR CORRECTION OF NAVAL RECORDS (BCNR)

This guide explains how to apply to BCNR for a correction of your naval record and describes the basic procedures that will be used to process your application.

1. BCNR'S STATUTORY AUTHORITY. Title 10 of the United States Code, Section 1552 authorizes the Secretary of the Navy to correct a servicemember's naval record when "necessary to correct an error or remove an injustice." In exercising this authority the Secretary is required to act through a board composed of Navy civilians who initially review and evaluate an applicant's claim of error or injustice. The Navy's rules and regulations which implement the basic provisions of the statute are set forth in SECNAV Instruction 5420.193.

2. WHO MAY APPLY TO BCNR. Any current or former member of the Navy or Marine Corps may apply for a correction of his/her naval record. A servicemember's spouse, parent, heir or legal representative may also apply if the servicemember is deceased, incapacitated or his/her whereabouts is unknown.

3. WHEN TO APPLY

a. Since BCNR is the highest echelon of review within the Department of the Navy for virtually all adverse military personnel actions, an applicant must exhaust all available administrative remedies before applying to BCNR. The most common examples of these other administrative appeals are as follows:

(1) Requests for an upgrade of a discharge which is less than 15 years old and not awarded by a general court-martial must be submitted first to the Navy Discharge Review Board (NDRB) on DD 293.

(2) Requests by Marine Corps personnel for removal or change of a fitness report must be submitted first to the Performance Evaluation Review Board (PERB) at Headquarters Marine Corps in accordance with MCO 1610.11A (NOTAL).

(3) Requests for a change of a Navy reenlistment code must be submitted first to the Bureau of Naval Personnel (Pers-254). Requests involving Marine Corps reenlistment codes should be sent to Headquarters Marine Corps (Code MMER).

b. BCNR has a statute of limitations requiring that applications be submitted within 3 years after discovery of the error or injustice. This time limit may be excused if BCNR finds that it would serve the interest of justice to do so. Consequently if you are late you must explain why you waited for more than 3 years after discovering the error or injustice to file your application, and request a waiver of the 3-year limit using block 11b of the application form.

4. <u>HOW TO APPLY</u>

a. To apply to BCNR you must submit a signed DD 149 which bears the official title, APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552. You may obtain a DD 149 from most personnel or legal offices. You may also obtain a DD 149 by writing to BCNR. Your request should be addressed to: Board for Correction of Naval Records, 2 Navy Annex, Washington, D.C. 20370-5100. You may also telephone BCNR at area code (703) 614-1402 or DSN 8-224-1402 between the hours of 7:30 A.M. and 4:00 P.M. Eastern Time, Monday through Friday.

b. The instructions for completing the application appear on the reverse side of the form and are self explanatory. However a word of caution is in order. Although you may ask for the opportunity to personally appear before BCNR in order to explain your case by checking YES in block 6, you should also understand that BCNR is under no legal obligation to grant such a request and in most cases does not do so. Consequently it is important for you to give special attention to the written information requested in blocks 9 and 17 of the application. In block 9 you should clearly identify the error or injustice in your naval record and the action that you want BCNR to take to remedy the situation. In block 17 you should set forth the events that led to the error or injustice and explain why you believe the treatment you received was erroneous or unfair. If the space provided in blocks 9 and 17 is not large enough you may use a separate piece of paper and attach it to the application.

5. <u>EVIDENCE OF ERROR OR INJUSTICE</u>

a. An application for correction of a naval record will not be granted unless the record itself contains or the applicant provides substantial evidence which persuades BCNR that he/she was the victim of an error or injustice. Absent such evidence

BCNR will presume that Navy and Marine Corps authorities have properly discharged their official duties and the application will therefore be denied.

b. In order to prove that you were victim of an error or injustice you should start by providing the information called for in blocks 9 and 17 of the DD 149. See section 4b of this guide for an explanation of the information to be supplied. Additionally, attach copies of your records or other official documents that support your claim of error or injustice as well as signed statements from persons who have first hand knowledge of the events that resulted in the error or injustice.

6. ADVICE AND ASSISTANCE AVAILABLE TO APPLICANTS

a. Although most applicants represent themselves, some retain the services of a private attorney. Most often this occurs in cases having complex factual or legal issues. Should you decide to have an attorney represent you, it will be your responsibility to pay for all legal expenses and you will not be reimbursed by the Navy even if BCNR finds an error or injustice in your record.

b. Veterans' service organizations at the local, state and national level are also available for consultation and will act as your representative before BCNR. Among the many national service organizations that provide assistance are the American Legion, Veterans of Foreign Wars, Disabled American Veterans, Paralyzed Veterans of America, Vietnam Veterans of America and the Order of the Purple Heart.

c. In addition to veterans' service organizations many members of Congress have on their staffs persons who specialize in offering advice and guidance on matters affecting servicemembers and veterans, and who would be more than willing to assist you in filing an application.

d. BCNR's professional staff is also available to answer any questions you may have regarding the filing of an application. Inquiries may be made in writing or by telephone. BCNR's mailing address and telephone are listed in section 4a of this guide.

e. If you decide to have someone represent you, you should list that person's name, mailing address and phone number where he or she can be reached during the day in block 7 of the application form. You should also understand that it is BCNR's usual practice to deal directly with your named representative rather than with you.

7. ADVISORY OPINIONS. After receiving your application a BCNR attorney or records examiner will conduct a preliminary review of its contents to determine whether or not an advisory opinion should be obtained from other naval authorities. If an advisory opinion is furnished to BCNR recommending that your application be denied, a copy will be forwarded to you and you will have 30 days in which to respond. You may request additional time if you feel you need it. Please understand that BCNR is not obligated to follow the opinions and recommendation expressed in the advisory opinion. Rather, it will analyze the contents of the advisory opinion as it would any other evidentiary item and then make an independent determination as to whether or not your request should be granted based on the total evidence or record.

8. REACHING A DECISION. Your application will be presented to a three-member panel by a staff attorney or records examiner who will provide technical advice and explain the issues. A supervisory attorney will also be present and act as recorder. Neither you nor your named representative will be present at these proceedings which are known as "executive sessions." Following an examination of the evidence and discussion of the issues the panel will decide by majority vote whether to deny your application, recommend that it be granted in whole or in part or hold a formal hearing at which you may appear either in person, or by counsel of your selection, or in person with counsel.

a. Should the panel vote to hold a formal hearing the BCNR staff will provide you written notice of the time and place of the hearing. You will also be provided with detailed instructions as to the manner in which the hearing will be conducted.

b. If the panel votes to deny your application you will be notified in writing of the panel's decision and the reason for its action.

c. If the panel votes to grant complete or partial relief a written report of the panel's proceedings will be forwarded to the Secretary of the Navy or his designee for final approval. If the Secretary approves the panel's report you will be notified in writing and your record will be corrected. Additionally a copy of the report will be forwarded to finance officials who will determine if you are entitled to any monetary benefits. If the Secretary disapproves the panel's recommendation he will do so in writing and set forth the basis for his disapproval. A copy of the panel's report and the Secretary's action will be sent to you.

9. RECONSIDERATION. You are entitled to have BCNR reconsider the decision in your case upon presentation of new and material evidence or other matter not previously considered.

Enclosure (3)